Brinkerhoee, J.
The case presented by the record is substantially this:
The plaintiff in error, Terrill, brought his action in the common pleas of Muskingum county, under the code, for the recovery of certain real property described in his petition, averring that he was the owner in fee and entitled to the possession thereof, and that the defendant in error unlaw *82 fully kept him out of possession. The defendant answered, denying that he unlawfully kept the plaintiff out of possession of the premises.
The case was submitted to the court for trial on the following state of facts, as shown by the bill of exceptions.
Both parties claimed under one John T. Brown as the common source of title to the lot in controversy.
On the 10th of September, 1856, Brown and wife, to secure a certain note to the plaintiff, Terrill, executed a deed of trust, which was duly recorded the same day, to one George James, in fee, providing that on the non-payment of the note, James should sell and convey the lot. The note not having been paid, James, in conformity with the terms of the deed of trust, on the 30th of June, 1860, sold and conveyed the lot in fee to Terrill, the creditor, and plaintiff here.
On the 27th of October, 1855, nearly a year prior to the execution of the deed of trust to James, Brown and wife, to secure the payment of a sum of money, executed to one Thomas, a mortgage of the same lot,, which was duly recorded ■the same day, and which was subsequently assigned by said Thomas to one Drake. Default having been made in the payment of the money intended to be secured by this mortgage, Drake commenced proceedings in the common pleas of Muskingum county for a sale of the lot, making the mortgagors, Brown and wife, and James, the trustee, Terrill, beneficiary under the deed of trust, and other lienholders, parties defendant.
At the February term, 1859, of said court, Brown and wife, and James and Terrill, being in default, and other lienholders having answered, an order for the sale of said premises was entered. Subsequently an order of sale was duly issued to the sheriff, and the premises were appraised, advertised, and, on the 1st day of August, 1859, sold to the defendant Auchauer, he being the highest bidder therefor. The premises were appraised at $580; and were sold for $511; being over •one hundred dollars in excess of two thirds of the appraised value.
In the appraisement of the premises preliminary to the sale, *83 Auehauer, the furehaser at the sheriff’s sale, and defendant ■here, served as one of the appraisers.
On the 3rd of August, 1859, the sheriff made his return of the order of sale.
On the 5th of the same month, five days after the sale, and •two days after the sheriff’s return, James, the trustee, and Terrill, the beneficiary under the deed of trust, came in and answered — setting up the deed of trust and the amount due under it, but neither contesting the priority of the mortgage lien, nor taking any exception to the validity of the sale.
On the 25th of the' same month, without objection by any party, the sale under the mortgage was confirmed and a deed ordered; which deed was afterward made by. the sheriff, conveying the premises to the defendant, Auehauer, who went into possession of the premises thereunder prior to the commencement of this action in the court below.
The proceeds of the sale under the mortgage were applied in payment of the mortgage and other prior lienholders, leaving a small residue applicable to' the payment of Terrill’s claim under the deed of trust, but which, it would seem, he declined to receive.
On this state of fact, the court of common pleas gave judgment for the defendant; and the plaintiff took a bill of exceptions embodying the facts .proved, substantially as above stated, and afterward filed his petition in error in the district court, which was reserved for decision here. And it is assigned for error that, upon the facts and law of the case, the court below erred in giving judgment for the defendant, Auchauer.
The sale and conveyance to the defendant, Auehauer, having been made under a decree upon a mortgage prior, in date and in record, to the trust deed under which Terrill, the plaintiff, claims; the plaintiff, in argument, tacitly admits, as he must, that had the sale to the defendant, Auehauer, been in all respects regularly made, he would have the better title to the premises in question; but it is contended by the plaintiff, that inasmuch as Auehauer was one of the appraisers of the premises sold, the subsequent sale, confirmation and conveyance to *84 him, were an absolute nullity, of which the plaintiff is entitled to take advantage in this proceeding, under section 441 of the code of civil procedure. That section provides, that “no sheriff or other officer making the sale of property, either personal or real, nor any appraiser of such property, shall, either directly or indirectly, purchase the same ; and every purchase so made shall be considered fraudulent and void.”
The question is not made by the pleadings in the case whether — taking the sale, for the reason alleged, to have been an absolute nullity, the defendant is not substituted, by way of equitable defense, to be subrogated to the rights of the mortgagee, and to hold the premises as a mortgagee in possession until the amount paid by him to satisfy preferable liens is reimbursed to him; nor is it made a question — though, in my opinion, it is a very serious one — whether, under the legislation and policy of Ohio, a sale, without appraisement under a deed of trust in the nature of a mortgage is admissible ; and we therefore pass them over, and proceed to consider and determine the case upon the question which arises upon the construction of the clause of the statute above quoted.
And taking the case as if dependent on that question alone, then, if a sale to an appraiser be absolutely void, so that it may be impeached in a collateral proceeding, it follows that the defendant has no legal title to the premises in controversy; but if the sale be voidable only, and good until avoided by a direct interposition or proceeding for that purpose, then he has a legal title to the premises, and the judgment of the court below was right.
The language of the statute is, “ every purchase so made shall be considered fraudulent and void.”
What is the precise idea which the legislature intended to express in the use of this language ? Was it intended that such sales, and all conveyances made in pursuance of them, should be, as to all the world, and under all circumstances, as if they had never been made — however advantageous the sale may have been to all parties interested, and however desirous such parties might be to maintain and enforce it ? Or was it intended only, that whenever a party interested in the sale *85 should directly interpose, or institute a proceeding to avoid the sale, it should “ be considered,” that is to say, adjudged oy the court, that the fact of" the parchaser having been an appraiser was conclusive evidence of fraud, and that the sale should thereupon be “ considered ” or adjudged void ? This is the question.
If the language of the statute were entirely unequivocal, we should be bound to follow it, to whatever consequences it might lead, short of a manifest absurdity. But this can hardly be said of the language of this clause of the statute. In common parlance, consideration means deliberation, thought; but in legal phraseology, the consideration of the court means the judgment of the court; and “ it is considered by the court,” is equivalent to “ it is adjudged by the court.” And the suggestion is, at least, not without plausibility, that this language of. the statute indicates a rule prescribed as a guide to judicial action, when invoked for the purpose, rather than a legislative fiat, always and everywhere operative irrespective of judicial action.
And the use of the word “ void ” in a loose and uncertain sense, is no novelty either in legislation or the language of jurists. In Allis v. Billings, 6 Metcalf, 417; the court say: “ The term ‘ void/ as applicable to conveyances or other agreements, has not at all times been used with technical precision, nor restricted to the peculiar and limited sense as contradistinguished from ‘voidable;5 it being frequently introduced, even by legal writers and jurists, where the purpose is nothing further'than to indicate that a contract was invalid, and not binding in law. But the distinction between the terms ‘ void ’ and ‘ voidable / in their application to contracts, is often one of great practical importance; and whenever entire technical accuracy is required, the term ‘ void ’ can only be properly applied to those contracts that are of no effect whatsoever; such as are a mere nullity, and incapable of confirmation or ratification.” And in that case it was held that the deed of a person non compos mentis, though such deed is often said to be “ void,” was voidable only, and was capable of confirmation by acts of the grantor in pais after his restoration to sanity. *86 And Denman, O.J., in Pearse v. Morrice, 2 Ad. & E. 94,. speaking of the construction of statutes, says, “the word ‘void’ has certainly been construed as ‘voidable’ in some instances.”
The case of Green v. Kemp, 13 Mass. 515, was an action for the recovery of real estate by the plaintiff as mortgagee of one Woods. The defendant being in possession of the premises under a quit-claim from Woods of the equity of redemption eo nomine, offered to prove on the trial that the mortgage tinder which the plaintiff claimed was made on a usurious contract. This evidence was held to have been properly rejected. The court say : “ Although by the statute, all mortgages on usurious considerations are declared to be utterly void; yet it never could have been intended that a stranger might enter on the mortgagee, or commit a trespass on the land, and justify himself under the statute, when all parties under the-title should be disposed to acquiesce in the contract. The. statute must have a reasonable construction, and in conformity to its general objeet; which was to protect debtors from the-enforcement of unconscionable demands..... The principle contended for by the tenant’s counsel, would seem to encourage fraud and injustice, rather than to restrain the taking of excessive usury.”
It is true the court in that case go on to say, that if the tenant had taken a conveyance of the land from the mortgagor, instead of his equity of redemption eo nomine, he might, being thus in privity with the mortgagor, have taken-advantage of the usury in that action. But this, we apprehend, gives no encouragement to the claim set up by the-plaintiff in this case to be permitted to attack the validity of this sale in a collateral proceeding; because, 1. As the case in Massachusetts then stood, it would seem that the usury could be taken advantage of in no other way, than as a defense to the action to recover the land under the mortgage; and 2. Because there the total loss of the money loaned was the very penalty which the statute designed to inflict for the practice-of usury. While here the legality of this sale was open to direct attack; and here the loss of his money paid by the *87 purchaser was never intended by the legislature as a consequence of the statute under consideration, but the loss of the benefit of his purchase only.
In the construction of statutes we may look to the mis ■ chiefs, if any, which the statute was designed to remedy, ana also to the consequences which would flow from any particular construction; and if the statute be fairly susceptible of two different constructions, we are at liberty to choose that on6 which, while it remedies the mischief aimed at, avoids the absurd or unjust consequences which would flow from the other. Now, the mischief which this statute aims to prevent is obviously that which arises from fraudulent appraisements, made with a view to the individual advantage of the appraiser when he becomes a bidder at the sale. This mischief is as effectually prevented by holding the sale to be voidable, at the option of the parties interested, on a proceeding for that purpose, as it would be by holding it to be an absolute nullity; while the injurious consequence, which would often follow if the sale be held to be strictly void, of depriving the parties interested of the benefit of a highly advantageous sale, and a purchaser who, though held fraudulent by the policy of the statute, may be wholly innocent in fact, of the purchase money he has paid, would be avoided. Eor it may well be, that an appraiser may be willing to bid more for a parcel of real estate than any one else ; he may have bought at the request of all parties interested; and yet if .his purchase be strictly void, it can not stand, although all parties may be anxious to sanction and confirm it.
Considering, then, that the language of this statute, ¿n its application to the point on which the question before us arises, is not entirely free from ambiguity, and giving due weight' to the argument ab ineonvenienti, it would seem that we ought to construe the word “void” in this statute as meaning “ voidable ” only, if we can find any established rule by which to distinguish cases in which it has been and ought to be so construed from those in which a literal construction has been adopted, and to hold that this case comes within the former category.
*88 Such a rule, we think, is found in the following language -of Bayley, J., in The King v. The Inhabitants of Hipswell, 8 B. & C. 471, where, discussing a question of statutory construction, he says : “But it is said that void is sometimes construed voidable, and where the provision is introduced for the benefit of the parties only, such a construction may be right, but where it is introduced for public purposes, and to protect those who are incapable of protecting themselves, it should receive its full force and effect.” Tested by this rule, the word “ void,” in the statute under consideration may be held to mean “ voidable ” only; for this provision of the statute was obviously introduced only for the benefit of parties to be affected by the sale. The public at large have no interest in the matter; and the parties in interest have full opportunity to protect themselves, by interposing to prevent the confirmation of a sale, or moving to set it aside, or, in a proper case, by a direct proceeding to avoid it after the conveyance is made. A rule substantially similar is stated by Lord Denman in Pearse v. Morrice, supra, in 1 these words : “ The word ‘void’ has certainly been construed as ‘voidable’ in some instances, where the proviso was introduced in favor of the party who did not wish to avoid the instrument.”
It may be here said, however, that the plaintiff, Terrill, was a party interested in the sale; and that he does wish to avoid it by means of this suit. But not so. This is a suit for the recovery of the land; and is not a suit to avoid the sale, in the sense of causing it to be set aside and a new sale made, so that justice may be done to all parties ; but the circumstances would indicate rather that he is wishing to affirm the sale so far as to have a lien preferable to his own, satisfied by the proceeds of the sale, and to disaffirm it so far as necessary to enable him wrongfully to dispossess the purchaser, and to appropriate the land under his own junior lien. With such a disaffirmance we can have no special sympathy.
In Anderson v. Roberts, 18 J. R. 529, O.J. Spencer, speaking of the distinction between things void and voidable only, says : “Whenever the act done takes effect as to some purposes, and is void as to persons who have an interest in im *89 peaching it, the act is not a nullity, and, therefore, in a legal sense, is not utterly void, but merely voidable. Another test •of a void act or deed, is that every stranger may take advantage of it, but not of a voidable one.” Now, let us suppose that on the coming in of the sheriff’s return of this sale, the purchaser, Auchauer, himself had moved the court to set aside the sale, or had resisted its confirmation, on the sole ground that he had served as an appraiser; and let us suppose further that every other party in interest, the debtor and all the lien-holders, had appeared and urged the confirmation of the sale, as being an advantageous one, the best that could probably be had. To my mind, such an application'would carry on its face something nearly akin to absurdity; and yet it must have prevailed, if the sale were strictly a nullity. Such, we think, could not have been the intention of the legislature.
And it seems to us that a party in interest seeking to avoid a sale of this kind should be permitted to do it only by a direct interposition or proceeding for that purpose; for, in no other way can justice be done alike to debtors, creditors, and purchaser, and the statute saved from being made an instrument of fraud instead of a safeguard against it.
On the whole, though the case is not free from difficulty, we are of opinion that the judgment of the court below was right.
Judgment affirmed.
Peck, C.J., and Gholson, and Scott, J.J., concurred. Ran-net, J., dissented.